# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JEFFREY BARON, ESQ. AND BARON
& BRENNAN, P.C.,

       Plaintiffs,

    v.

NAUTILUS INSURANCE COMPANY,

       Defendant.

No. 1:22-cv-2279

**OPINION**

<u>**APPEARANCES**</u>:

Fredric Leigh Shenkman
COOPER LEVENSON, PA
1125 Atlantic Avenue
Third Floor
Atlantic City, NJ 08401-1125

    *On behalf of Plaintiffs.*

Adam M. Smith
Patrick Anthony Florentino
William Cro
COUGHLIN MIDLIGE & GARLAND LLP
350 Mt. Kemble Avenue
P.O. Box 1917
Morristown, NJ 07960

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

    This matter comes before the Court on a motion for summary judgment by Plaintiffs Jeffrey

I. Baron, Esq., and Baron & Brennan, P.C. (collectively, "Plaintiffs") (ECF No. 51), motion for

summary judgment by Defendant Nautilus Insurance Company ("Defendant" or "Nautilus") (ECF

No. 52), and a cross-motion for summary judgment by Defendant, (ECF No. 62). The Court did

not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**, Defendant's Cross-Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**.

**BACKGROUND**[1]

**A.  The Hanover Insurance Policy and the Samost Lawsuits**

This matter arises from Plaintiffs' procurement of professional liability insurance policies. (Pla. SOMF, ECF No. 51-2, ¶ 4; Def. SOMF, ECF No. 52-2, ¶¶ 1, 40).  Plaintiff Jeffrey Baron, Esq., a licensed attorney in New Jersey, is a partner at Plaintiff Baron & Brennan, P.C. ("the Firm"). (Pla. SOMF, ECF No. 51-2, ¶¶ 1–3). Baron obtained the insurance policies for the Firm. (Pla. SOMF, ECF No. 51-2, ¶ 4). From September 22, 2019, through September 22, 2020, the Firm had insurance through the Hanover Insurance Group ("the Hanover Policy"). (Pla. SOMF, ECF No. 51-2, ¶ 5; Def. SOMF, ECF No. 52-2, ¶ 1).

Beginning in the 1980s through 2018 and/or 2019, Baron represented Joseph and Iva Samost. (Pla. SOMF, ECF No. 51-2, ¶ 6). Over the years, the Samost family filed many lawsuits against various individuals and entities, including against Baron. (Pla. SOMF, ECF No. 51-2, ¶ 7). First, on November 26, 2019, Linda Samost, Joseph and Iva's daughter, filed a lawsuit as guardian for Iva alleging breach of fiduciary duty, among other causes of action, against Baron, and other attorneys, related to the management and control of Samost family assets ("the 2019 Samost Complaint"). (Pla. SOMF, ECF No. 51-2, ¶ 8; Def. SOMF, ECF No. 52-2, ¶ 12). Then, on April 22, 2020, Baron was again named as a defendant in second complaint brought by the Samost family; this time to quiet title over parcels of real property by EIL Investments, L.P., an entity owned by members of the Samost family ("the 2020 Samost Claim"). (Pla. SOMF, ECF No. 51-

---

[1]  The facts set forth herein are undisputed unless otherwise noted.

2, ¶ 10; Def. SOMF, ECF No. 52-2, ¶¶ 17, 21). The 2020 Samost Claim alleged that Baron and others took over management and control of various Samost-owned entities. (Def. SOMF, ECF No. 52-2, ¶ 24).

Both the 2019 and the 2020 Samost Claims were submitted to Hanover. (Pla. SOMF, ECF No. 51-2, ¶ 11). After advising Plaintiffs that both claims were "being treated as related claims," as defined under the 2019 Hanover Policy, Hanover accepted coverage of both claims. (Pla. SOMF, ECF No. 51-2, ¶ 11; Def. SOMF, ECF No. 52-2, ¶ 31).

### B.  The Nautilus Policy

Before the 2019–20 Hanover Policy expired, on July 30, 2020, Baron was advised that Hanover would not be renewing its policy and, therefore, Baron applied for professional liability insurance coverage with Berkley Insurance Company ("Berkley"), an entity affiliated with Nautilus, through broker, USI Affinity ("USI"). (Pla. SOMF, ECF No. 51-2, ¶ 13, Def. Resp. to Pla. SOMF, ECF No. 61-1, ¶ 12). Plaintiffs listed the Firm's insurance carrier for the last five years on the application form, including the 2019–20 Hanover Policy. (Pla. SOMF, ECF No. 51-2, ¶ 14). The application also specifically asked about prior professional liability claims in Question 39:

> During the last 5 years, has any professional liability claim or suit been made against the Applicant Firm, or any predecessor in business, or any past or present lawyers in the Applicant Firm? **If "Yes", complete the Claim/Incident Section of the Supplemental Application.**

(Pla. SOMF, ECF No. 51-2, ¶ 15). The application then stated in bold and all capital letters:

> IT IS UNDERSTOOD AND AGREED THAT THE INSURER SHALL NOT BE LIABLE TO MAKE ANY PAYMENT FOR DAMAGES OR CLAIMS EXPENSE IN CONNECTION WITH ANY CLAIM MADE AGAINST ANY INSURED BASED UPON, ARISING OUT OF, DIRECTLY OR INDIRECTLY RESULTING FROM OR IN CONSEQUENCE OF, OR IN ANY WAY INVOLVING  ANY PROFESSIONAL LIABILITY CLAIM OR SUIT, FACT, CIRCUMSTANCE, OR SITUATION. SET FORTH OR THAT SHOULD HAVE BEEN SET FORTH IN RESPONSE TO QUESTIONS 39 OR 40.

(Def. SOMF, ECF No. 52-2, ¶ 36; Florentino Cert., Def. Br., ECF No. 52-10, Ex. F).

Plaintiffs completed the required supplemental application with the relevant information, which included the 2019 and 2020 Samost Claims. (Pla. SOMF, ECF No. 51-2, ¶ 16). The supplemental application also contained an exclusion:

> It is understood and agreed that the insurer shall not be liable to make any payment for damages or claims expenses in connection with any claim against any insured based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any professional liability claim or suit, fact, circumstance, or situation set forth in response to Questions 39 or 40.

(Pla. SOMF, ECF No. 51-2, ¶ 18).

On September 11, 2020, USI emailed Plaintiffs a proposed offer for coverage by Nautilus. (Pla. SOMF, ECF No. 51-2, ¶ 19). In the email, USI also inquired as to the 2020 Samost Claim:

> Please advise [why] the EIL Investment matter is not reflected on the Hanover loss run? Did Hanover log this matter with the November "Samost" matter?

(Pla. SOMF, ECF No. 51-2, ¶ 19). On September 14, 2020, the Firm responded to USI with copies of the completed application, the supplemental application, and further advised "the EIL matter is not reflected in the Hanover loss run because it was logged with the November 'Samost' matter since it involved a Samost asset and EIL Investment is an entity owned by or related to the Iva Samost Revocable Trust." (Pla. SOMF, ECF No. 51-2, ¶ 22).

Three days later, USI provided Plaintiffs with the Nautilus finance agreement and insurance quote. (Pla. SOMF, ECF No. 51-2, ¶¶ 24–31). The Lawyers Professional Liability Insurance Quote noted a "specific claim or incident exclusion" form:

| Form Number | Edition Date | Form Name/Description |
|---|---|---|
| LPL 400906-CW (10-1 | | Specific Claim or Incident Exclusion |
| 150-0718 (07-18) | | IMPORTANT NOTICE OF POLICYHOLDERS |

(Pla. SOMF, ECF No. 51-2, ¶ 28).

Baron paid the premium and signed the Order to Bind. (Pla. SOMF, ECF No. 51-2, ¶¶ 34–35). Then, on September 23, 2020, Nautilus sent Plaintiffs confirmation that coverage had been bound. (Pla. SOMF, ECF No. 51-2, ¶¶ 37–38). Nautilus provided USI with a quote package, which listed five endorsements, including an exclusion endorsement. (Pla. SOMF, ECF No. 51-2, ¶¶ 43–46). The quote package stated that "title for each endorsement listed in the quotation does not describe the scope or intent of such endorsement. Please read each endorsement carefully." (Pla. SOMF, ECF No. 51-2, ¶ 46). Plaintiffs claim that despite their repeated requests they were not provided with a copy of the insurance policy or any exclusion endorsement until February 2021. (Pla. SOMF, ECF No. 51-2, ¶ 49).

### C. The 2021 Claim

In early 2021, EIL Investments, among other plaintiffs including Iva (via guardian), Linda, and Ellen Samost, filed another complaint against Baron and other defendants ("2021 Samost Claim"). (Pla. SOMF, ECF No. 51-2, ¶ 50). On February 12, 2021, Baron sent a letter to Nautilus and USI confirming a telephone conversation with a USI account executive that he had been served with the 2021 Samost Claim and reiterated that Plaintiffs never received a copy of the insurance policy. (Pla. SOMF, ECF No. 51-2, ¶¶ 52–54). That same day, the assigned claims consultant advised Baron that they were "still working through the documentation on this file." (Pla. SOMF, ECF No. 51-2, ¶ 55). Later, a USI account executive emailed Baron advising him that she had sent documents to her "back up assistant to make sure the reporting has been done correctly" and attached a copy of the insurance policy to the email. (Pla. SOMF, ECF No. 51-2, ¶ 58).

The policy contained a declarations page, applicable coverage section, and endorsements. (Pla. SOMF, ECF No. 51-2, ¶ 59). The declarations page stated, "Date Issued: September 18,

2020." (Pla. SOMF, ECF No. 51-2, ¶ 60). It also contained five endorsements, including a "Specific Claim or Incident Exclusion" ("SCI Exclusion"):

1. 150-0718      (08-18)    IMPORTANT NOTICE TO POLICYHOLDERS
2. 701-CR-      0419      CLAIM REPORTING PROCEDURES
3. LPL 400906-CW (10-14)  Specific Claim or Incident Exclusion
4. NIC-E906-    0816      Service of Suit
5. NJ-PHN-      1019      NEW JERSEY POLICY HOLDER NOTICE

(Pla. SOMF, ECF No. 51-2, ¶ 61). The SCI Exclusion endorsement did not list any exclusions:

Specific Claim or Incident Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that:
1. Section IV, Exclusions of this Policy is amended by the addition of the following:
IV. This Policy does not apply to any claims based on, arising from, or any way involving any of the following matters:
DESCRIPTIONS OF EXCLUDED CLAIMS AND/OR INCIDENT.
**[blank]**

(Pla. SOMF, ECF No. 51-2, ¶ 62). Nautilus maintains that this was mistakenly left blank on the original insurance policy. (Def. SOMF, ECF No. 52-2, ¶ 42).

On February 17, 2021, Baron received an email from USI with the insurance policy. (Pla. SOMF, ECF No. 51-2, ¶¶ 71–72). Shortly thereafter, Baron received a letter from Berkley enclosing an amended insurance policy with following corrections: "(1) endorsement correction and (2) correction to the SCI Exclusion included on the policy." (Pla. SOMF, ECF No. 51-2, ¶ 73). The letter stated that the amended insurance policy "is designed to replace your previously issued policy that is now considered null and void." (Pla. SOMF, ECF No. 51-2, ¶ 73). The amended insurance policy covered the same policy period as the original period, but this time included a specific exclusion:

Specific Claim or Incident Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that:
1. Section IV, Exclusions of this Policy is amended by the addition of the following:

6

IV. This Policy does not apply to any claims based on, arising from, or any way involving any of the following matters:
DESCRIPTIONS OF EXCLUDED CLAIMS AND/OR INCIDENT.
**EIL Investments/Linda Samost**

(Pla. SOMF, ECF No. 51-2, ¶ 74). Nautilus maintains that the amended policy was the intended version of the SCI Exclusion which was mistakenly left blank in the original policy documents. (Def. SOMF, ECF No. 52-2, ¶ 44).

Independent of the SCI Exclusion, both the original and amended insurance policy define "related acts or omission" as "all acts or omissions in the rendering of Legal Services that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision," and "related claims" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services." (Def. SOMF, ECF No. 52-2, ¶ 47; Florentino Cert., Def. Br., ECF No. 52-13, 15, Exs. I, K).

On February 17, 2021, Baron submitted the 2021 Samost Claim to Hanover, describing the lawsuit as a "related claim" to the claims already being defended by Hanover. (Def. SOMF, ECF No. 52-2, ¶ 76). On February 25, 2021, Hanover denied coverage for the 2021 Samost Claim because the allegations arose prior after the policy period and because Hanover concluded the claim were not related to the 2019 and 2020 Samost Claims. (Def. SOMF, ECF No. 52-2, ¶ 77). Plaintiffs submitted the denial of coverage letter to Nautilus. (Def. SOMF, ECF No. 52-2, ¶ 78).

On March 4, 2021, Nautilus issued a Declination of Coverage letter to Plaintiffs for the 2021 Samost Claim. (Pla. SOMF, ECF No. 51-2, ¶ 86). The letter states that Nautilus denied coverage because of the endorsement SCI Exclusion in the amended insurance policy and because it was a related claim to the 2019 and 2020 Samost Claims under Section I.A.1. (Def. SOMF, ECF No. 52-2, ¶ 79). Section I.A.1 states:

## I.  INSURING AGREEMENTS

### A.  Lawyers Professional Liability Insurance Coverage

The **Insurer** agrees to pay on behalf of the **Insured** all sums in excess of the deductible, up to the Limit of the Liability, that the **Insured** shall become legally obligated to pay as **Damages** and **Claim Expenses** because of a **Claim** that is both first made against the **Insured** and reported in writing to the **Insurer** during the **Policy Period** or any Extended Reporting Period, if applicable, by reason of an act or omission in the performance of **Legal Services** by the **Insured** or by any person for whom the **Insured** is legally liable, while acting on behalf of the **Named Insured** for clients of the **Named Insured**, provided that:

1.      No insured gave notice to a Prior Insurer of such a Claim or Related Claim; and

2.      No insured gave notice to a Prior Insurer of any such act or omission or Related Act or Omission; and

3.      Prior to the date an Insured first becomes an Insured under this policy or became an insured under the first policy issued by the Insurer (or its subsidiary or affiliated insurers) to the Named Insured or any Predecessor Firm, whichever is earlier, of which this Policy is a renewal or replacement, no Insured had a basis to believe that any such act or omission, or Related Act or Omission, might reasonably be expected to be the basis of such Claim; and

4.      Such act or omission happened subsequent to the Prior Acts Date.

(Florentino Cert., Def. Br., ECF No. 52-13, -15, Exs. I and K).

Plaintiffs filed suit asserting a claim for declaratory judgment against Nautilus ("Counts Four and Seven"); breach of contract ("Count Five"); breach of the covenant of good faith and bad dealing ("Count Six"); and a violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, et seq. ("Count Eight"). (Compl., ECF No. 1-2).[2]

## I.    <u>PROCEDURAL HISTORY</u>

On March 21, 2022, Plaintiffs filed a Complaint in the Superior Court in Camden County.

---

[2]   Plaintiffs had also brought claims against Hanover in the Complaint but later filed a stipulation of dismissal on February 7, 2023. (ECF No. 39).

(ECF No. 1). On April 19, 2022, Hanover filed a Notice of Removal in this Court. (ECF No. 1). On August 1, 2023, the parties each filed the present summary judgment motions. (ECF Nos. 51–52). Plaintiffs filed opposition on September 14, 2023. (ECF No. 59). Defendant filed opposition on September 18, 2023. (ECF No. 61). On September 19, 2023, Defendant filed a cross-motion for summary judgment. (ECF No. 62). Both parties filed replies on October 10, 2023. (ECF Nos. 65–66).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(a)). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

## III.   <u>DISCUSSION</u>

Plaintiffs have moved for summary judgment primarily arguing that (1) under New Jersey law an insurer cannot exclude coverage if it failed to attach an exclusion endorsement describing the exclusion to its policy, (2) the original policy was an enforceable, unambiguous contract that did not exclude coverage of the 2021 Claim, (3) Nautilus violated the covenant of good faith and fair dealing and the CFA by excluding the claim, and finally, (4) that the doctrine of reformation compels coverage of the 2021 Claim. (Pla. Br., ECF No. 51-1 at 9–35). Ultimately, Plaintiffs seek a declaratory judgment that:

> Nautilus is contractually bound to provide coverage pursuant to the policy negotiated and bound at the start of the policy period, (2) Plaintiffs' insurance policy with Nautilus contained no exclusions of claims or incidents, (3) the new or unilaterally amended policy is not binding on the parties and unenforceable, and (4) Nautilus was required to cover the claim submitted and must pay for defense and indemnification costs in accordance with the proposed order accompanying this motion.

(Pla. Br., ECF No. 51-1 at 2).

Defendant moves for summary judgment arguing that there is no coverage under the Nautilus Policy because the 2021 Samost Claim is a related claim to the 2019 and 2020 Samost Claims. (Def. Br., ECF No. 52-1 at 12–26). Alternatively, Defendant maintains that the absence of a completed SCI Exclusion in the original policy was an administrative mistake that was rectified in the amended policy and precludes coverage for the 2021 Claim. (Def. Br., ECF No. 52-1 at 26–28). Defendant also cross-moved for summary judgment as to Plaintiffs' claims for bad faith, punitive damages, and violations of CFA, relying on its brief filed in support of its summary judgment motion. (Def. Br., ECF No. 62).

    1.   The SCI Exclusion

Here, there are no genuine issues of material fact. Moreover, the interpretation of an insurance policy is a question for the Court to decide as a matter of law. *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 510 (D.N.J. 2008). Under New Jersey law, "[a]n insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citations omitted). The policy language is interpreted "according to its plain and ordinary meaning." *Id.* (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992)). If the policy language is clear, that is the end of the inquiry. *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008). Indeed, "in the absence of an ambiguity, a court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Id.* (quoting *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001)).

However, "[i]f the terms are not clear, but instead are ambiguous, they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." *Flomerfelt*, 997 A.2d at 996. When an ambiguity exits, "coverage clauses should

be interpreted liberally, whereas those of exclusion should be strictly construed." *Simonetti v. Selective Ins. Co.*, 859 A.2d 694, 699 (N.J. Super. Ct. App. Div. 2004) (citing *Butler v. Bonner & Barnewall, Inc.*, 267 A.2d 527, 532 (N.J. 1970)). "However, ambiguities will not be forced into an insurance policy nor will the words of an insurance policy be artfully construed to include a type of coverage outside the scope and nature of the policy in question." *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020) (citing *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004)).

"Additionally, in the context of an insurance policy, '[e]xclusionary clauses are presumptively valid and are enforced if they are specific, plain, clear, prominent, and not contrary to public policy.'" *Body Physics v. Nationwide Ins.*, 524 F. Supp. 3d 372, 378 (D.N.J. 2021) (quoting *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *4 (D.N.J. Feb. 10, 2021)). Yet, the insurer bears the burden of establishing that the claim falls within the exclusionary clause. *Id.* Indeed, "exclusions are ordinarily strictly construed against the insurer, and if there is more than one possible interpretation of the language, courts apply the meaning that supports coverage rather than the one that limits it." *Id.* at *4 (quoting *Flomerfelt*, 997 A.2d at 997). "But '[i]f the words used in an exclusionary clause are clear and unambiguous, a court should not engage in a strained construction to support the imposition of liability.'" *Body Physics*, 524 F. Supp. 3d at 378 (quoting *Flomerfelt*, 997 A.2d at 997).

Here, Plaintiffs' application included detailed explanations about the 2019 and 2020 Samost Claims and the application stated in bold and in all capital letters,

> IT IS UNDERSTOOD AND AGREED THAT THE INSURER SHALL NOT BE
> LIABLE TO MAKE ANY PAYMENT FOR DAMAGES OR CLAIMS EXPENSE
> IN CONNECTION WITH ANY CLAIM MADE AGAINST ANY INSURED
> BASED UPON, ARISING OUT OF, DIRECTLY OR INDIRECTLY
> RESULTING FROM OR IN CONSEQUENCE OF, OR IN ANY WAY
> INVOLVING  ANY PROFESSIONAL LIABILITY CLAIM OR SUIT, FACT,

CIRCUMSTANCE, OR SITUATION SET FORTH OR THAT SHOULD HAVE BEEN SET FORTH IN RESPONSE TO QUESTIONS 39 OR 40.

(Def. SOMF, ECF No. 52-2, ¶ 36; Florentino Cert., Def. Br., ECF No. 52-10, Ex. F). It is also undisputed that the original policy inexplicably did not include any description in the SCI Exclusion. (Pla. SOMF, ECF No. 51-2, ¶ 62; Def. SOMF, ECF No. 52-2, ¶ 41). Indeed, it is undisputed that although the policy contained an exclusion endorsement, the SCI Exclusion endorsement did not list any *specific* exclusion:

Specific Claim or Incident Exclusion

In consideration of the premium paid for this Policy, it is understood and agreed that:
1. Section IV, Exclusions of this Policy is amended by the addition of the following:
IV. This Policy does not apply to any claims based on, arising from, or any way involving any of the following matters:
DESCRIPTIONS OF EXCLUDED CLAIMS AND/OR INCIDENT.

**[blank]**

(Pla. SOMF, ECF No. 51-2, ¶ 62; Def. SOMF, ECF No. 52-2, ¶ 41). Thus, although the original policy stated that there is a SCI Exclusion endorsement, it did not *describe* the excluded claims and/or incident in any section of the policy documents. However, the Nautilus Policy's declarations page also clearly stated that "These Declarations along with the completed and signed Application and the Lawyers Professional Liability Insurance Policy shall constitute the contract between the Named Insureds and the Insurer." (Shenkman Cert., Pla. Br., ECF No. 51-7). Thus, the Court must also look to and consider the application.

As an initial matter, Defendant bears the burden of proof as the provisions at issue are all exclusionary in nature. *See Causeway Auto., LLC*, No. 20-8393, 2021 WL 486917, at *4 (D.N.J. Feb. 10, 2021); *Gladstone v. Westport Ins. Corp.*, No. 10-652, 2011 WL 5825985, at *9 (D.N.J. Nov. 16, 2011), *aff'd sub nom. Szaferman, Lakind, Blumstein & Blader PC v. Westport Ins. Corp.*, 518 F. App'x 107 (3d Cir. 2013) ("Defendant has the burden of proving that the inter-related

wrongful act provision applies in this case because it operates as an exclusion."). And the Court must take note of the inexplicable omission in the SCI Exclusion. Indeed, "[a] policy is ambiguous when it is susceptible to more than one reasonable interpretation." *Stern & Eisenberg, P.C. v. Sentinel Ins. Co., Ltd.*, 534 F. Supp. 3d 357, 363 (D.N.J. 2021). Here, despite Plaintiff putting Defendant on notice of the 2019 and 2020 Samost Claims, Defendant did not include those claims, or any claims, in the SCI Exclusion. Thus, the SCI Exclusion itself cannot be said to be "specific, plain, clear" as to whether the 2019 and 2020 Samost Claims are excluded claims. *See Body Physics*, 524 F. Supp. 3d at 378 (internal quotation and citation omitted). But the Court's analysis does not end here as Plaintiffs suggest. *See* (Pla. Br., ECF No. 51-1 at 9). In the Court's view, the SCI Exclusion is not dispositive and, does not resolve the question of whether the 2021 Samost Claim is covered.

And given the significant factual differences, Plaintiff's reliance on *Doto v. Russo*, 659 A.2d 1371 (N.J. 1995), is unavailing. There, the Court explained that "insurance companies [cannot] seek refuge in the literal language of their policies when the company's conduct and actions, or that of their agents, causes the insured to act or to fail to act based on that conduct." *Id.* at 1377. There the New Jersey Supreme Court found that the insurer was estopped from denying coverage given the course of conduct the insurer took that "would have convinced an objectively reasonable insured to believe that the umbrella policy contained UM/UIM coverage." *Id.* Unlike *Doto*, here, there was never any express representations by Defendant that any potential or future claims related to the 2019 and 2020 Samost Claims *would* be covered.

And neither Defendant or Plaintiffs can rely on reformation to cure the SCI Exclusion's critical omission as Defendant argues, or to compel coverage of the 2021 Samost Claim as Plaintiffs contend. Reformation, as Plaintiffs note, is granted to correct a *mutual* mistake shown

14

by clear and convincing evidence, which in this case neither party can show. *United States v. Berk & Berk*, 767 F. Supp. 593, 601 (D.N.J. 1991) ("Reformation is appropriate where a valid contract exists between the parties but for some reason the instrument that memorializes the agreement of the parties does not reflect the agreement of the parties."). Indeed, the application makes clear that Nautilus would not provide coverage for

> ANY CLAIM MADE AGAINST ANY INSURED BASED UPON, ARISING OUT OF, DIRECTLY OR INDIRECTLY RESULTING FROM OR IN CONSEQUENCE OF, OR IN ANY WAY INVOLVING ANY PROFESSIONAL LIABILITY CLAIM OR SUIT, FACT, CIRCUMSTANCE, OR SITUATION SET FORTH OR THAT SHOULD HAVE BEEN SET FORTH IN RESPONSE TO QUESTIONS 39 OR 40.

(Def. SOMF, ECF No. 52-2, ¶ 36; Florentino Cert., Def. Br., ECF No. 52-10, Ex. F). Certainly, Plaintiffs cannot maintain that there was an agreement to cover any potential or future claims arising from the 2019 and 2020 Samost Claims when the application expressly stated otherwise.

Additionally, "[i]t is well-established that as a general rule neither the insurer nor the insured has any power to rescind, cancel, surrender or abandon a contract of insurance except by virtue of some statute, the terms of the contract, the mutual consent of the parties through an extraneous agreement, or a reserved power in the contract like that of unilateral cancellation." *Meier v. New Jersey Life Ins. Co.*, 503 A.2d 862, 873 (N.J. 1986). Moreover, the Nautilus Policy expressly requires notice prior to terminating the policy, which Nautilus did not do before voiding the original policy and issuing the amended policy. (Pla. SOMF, ECF No. 51-2, ¶ 66). Thus, by the terms of the insurance policy and under New Jersey law, Nautilus could not simply and unilaterally void the original policy.

As such, the Court must look at the entire original policy and relevant documents to determine whether the 2021 Samost Claim, was, nevertheless, properly excluded.

2.  The Nautilus Policy Section I.A.1

Defendant maintains that the 2019, 2020, and 2021 Samost Claims are "related claims" based on the language of the Nautilus Policy and as such, there is no coverage available for the 2021 Samost Claim under Section I.A.1.[3] (Def. Br., ECF No. 52-1 at 12–26). Conversely, Plaintiffs maintain that the 2021 Samost Claim is a stand-alone cause of action "made against the Insured during the Policy Period" and is a covered claim.  (Pla. Br., ECF No. 51-1 at 19; Pla. Opp., ECF No. 59 at 7–11).

Here, the original policy defines "related acts or omission" as "all acts or omissions in the rendering of Legal Services that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision," and "related claims" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services." (Def. SOMF, ECF No. 52-2, ¶ 47; Florentino Cert., Def. Br., ECF No. 52-13, -15, Exs. I, K).[4] Further, Section I.A.1 of the Nautilus Policy states that it will provide insurance coverage as long as:

1.  No insured gave notice to a Prior Insurer of such a Claim *or Related Claim*; and

---

[3]  Defendant heavily relies upon the fact that Plaintiffs first sought coverage for the 2021 Samost Claim from Hanover and in doing so alleged it was a related claim to the 2019 and 2020 Samost claims Hanover had covered. (Def. Br., ECF No. 52-1 at 10, 23). However, it appears Plaintiff did so at the request of Nautilus. (Pla. Opp., ECF No. 59 at 5). Nevertheless, Plaintiffs request that Hanover cover the 2021 Samost Claim under the definition of related claims under the Hanover policy is not determinative of whether the claim is a related claim to the 2019 and 2020 Samost Claims. Moreover, Hanover's determination that the 2021 Samost Claim was not a related claim under the Hanover Policy is not dispositive as the Court must make that determination solely based on the language of the Nautilus Policy.

[4]  While the Court has determined that Nautilus could not terminate the original policy and issue an amended policy and is thus looking to the original policy as the operative document, the remaining issue as to whether the 2021 Samost claim is excluded based upon the "related claims" provision is exactly the same as both policies contain the same language.

2. No insured gave notice to a Prior Insurer of any such act or omission *or Related Act or Omission*; and

3. Prior to the date an Insured first becomes an Insured under this policy or became an insured under the first policy issued by the Insurer (or its subsidiary or affiliated insurers) to the Named Insured or any Predecessor Firm, whichever is earlier, of which this Policy is a renewal or replacement, no Insured had a basis to believe that any such act or omission, or Related Act or Omission, might reasonably be expected to be the basis of such Claim; and

4. Such act or omission happened subsequent to the Prior Acts Date.

(Florentino Cert., Def. Br., ECF No. 52-13, -15, Exs. I and K) (emphasis added). Therein lies the critical question: whether the 2021 Samost Claim is related, as the term "Related Claim" or "Related Act or Omission" is defined in the policy, to the 2019 and 2020 Samost Claims such that it is excluded from coverage. The Court concludes that the 2021 Samost Claim is in fact related to the prior claims and, as such, is excluded.

In *Papalia v. Arch Insurance Company*, this Court interpreted a similar "related claims" provision in a declaratory judgment action. No. 15-02856, 2017 WL 3288113, at *2 (D.N.J. Aug. 1, 2017) (Vasquez, J.). There, the policyholder, a life insurance agent accused of misconduct, argued that subsequently filed claims brought by two different groups of clients were "related claims" with prior claims. *Id.* at *1–5. In the Arch policy, "related claims" was defined like that in the Nautilus Policy:

> [A]ll Claims, whether made against more than one Insured or by more than one claimant, arising out of a single Wrongful Act or Wrongful Supervision or Termination Act or a series of Wrongful Acts or Wrongful Supervision or Termination Acts that have as common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

*Id.*

The Court concluded that this "related claims" definition was "extraordinarily broad" given its use of "all" and the omission of exceptions. *Id.* at 10. The Court also relied on the definition's

use of "any" situation versus a word of limitation in determining that the scope of the provision was broad. *Id.* And relying on the dictionary definition of "nexus," the Court found that claims would be related if they arise from a nexus of causally related facts. *Id.* at 11. The Court also found that the language of the policy was clear and unambiguous. *Id.* Applying this interpretation, the Court concluded that the claims were related because all the claims involved "the same misrepresentations, the same types of . . . plans, and the same result." *Id.* at 13. Indeed, the Court explained that all the claims related to "Papalia's overarching scheme" "to have his clients invest, through life insurance, in the same plan that would not provide the promised tax benefits" for the benefits claimants and "to sell unsuitable life insurance policies to the claimants so that Papalia could collect large commissions" for the life insurance claimants. *Id.* at 14; *see also Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1264 (11th Cir. 2000) (affirming entry of summary judgment for insurer after concluding separate claims by law firm were related because although "course of conduct involved different types of acts, these acts were tied together because all were aimed at a single particular goal" of promoting investment into a company).

*Gladstone v. Westport Insurance Company* presented similar facts to those presented here albeit in the context of a different provision, the inter-related wrongful act provision. *Gladstone*, 2011 WL 5825985, at *7. Though different than the provision at issue in this case, it, nevertheless, provides guidance. In *Gladstone*, the question was whether two separate lawsuits, one of which was filed before the policy period, arose out a single wrongful act such that the insured properly denied coverage of the second lawsuit that was filed during the policy period. *Id.* The relevant inter-related wrongful act provision stated:

> Two or more CLAIMS arising out of a single WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first

made arising out of such WRONGFUL ACT, as defined in the applicable COVERAGE UNIT, and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

*Id.*

On the issue of whether the second lawsuit arose out of a single wrongful act, the Court concluded that it did. *Id.* at *9. Specifically, the Court explained that both lawsuits claimed that the lawyer's work on a particular case was negligent. *Id.* The Court ultimately concluded that "[n]o reasonable jury could stray from the conclusion that the 2007 Bleimaier Counterclaim alleged negligence during his work on the Hopewell Zoning Matter," which was the basis for the 2009 lawsuit. *Id.* As such, the Court determined that under the terms of the policy, the 2009 lawsuit was a claim first made in 2007 when the 2007 counterclaim was filed, and thus, was not covered by the terms of the policy. *Id.*

Here, there are three relevant lawsuits. The first was filed on November 26, 2019, by Linda Samost as guardian for Iva Samost alleging breach of fiduciary duty, among other causes of action, against Baron, and other attorneys, related to the handling and management of Samost family assets. (Pla. SOMF, ECF No. 51-2, ¶ 8; Def. SOMF, ECF No. 52-2, ¶ 12). More specifically, this complaint alleges the mishandling of Samost assets, including Samost owned real estate entities, by Baron and others through the Iva Samost Revocable Trust ("IVST") and Ellen Samost Management Trust ("ESMT"). (Florentino Cert., Def. Br., ECF No. 52-5, Ex. A). Then, on April 22, 2020, Baron was again named as a defendant in second complaint brought by the Samost family to quiet title over parcels of real property by EIL Investments, an entity owned by members of the Samost family, again alleging Baron improperly managed and controlled various Samost family entities. (Pla. SOMF, ECF No. 51-2, ¶ 10; Def. SOMF, ECF No. 52-2, ¶¶ 17, 21). Specifically, this complaint discusses Baron's alleged actions in the sale of the properties at issue in the quiet

title action. (Florentino Cert., Def. Br., ECF No. 52-8, Ex. D). This complaint also restates the alleged mismanagement of Samost entities outlined in the 2019 Complaint. (Florentino Cert., Def. Br., ECF No. 52-16, Ex. L).

Finally, in 2021, EIL Investments, among other plaintiffs including Iva (via guardian), Linda, and Ellen Samost, filed third complaint against Baron and other defendants alleging Baron participated in the restructuring of many Samost family entities. (Florentino Cert., Def. Br., ECF No. 52-16, Ex. L).  Again, this Complaint, like the others, discusses at length the protracted history of the Samost family business entities, including the sale at issue in the 2020 Complaint. (Florentino Cert., Def. Br., ECF No. 52-16, Ex. L). Indeed, the breach of fiduciary duty count in the Complaint against Baron and others is based on the alleged restructuring of Samost-owned entities, including the EIL Investment property sale alleged in the 2020 Samost Claim, the creation of the ESMT alleged in the 2019 Samost Claim, among other businesses. (Florentino Cert., Def. Br., ECF No. 52-16, Ex. L).

Like *Papalia*, the "related claims" definition at issue in the applicable policy is very broad as it also includes the words "all" and "any" and does not contain exceptions. Like *Gladstone*, the allegations in the 2021 Claim, in part, rely upon the *same allegations* that formed the basis for the 2019 and 2020 Samost Claims. Indeed, the breach of fiduciary duty count even cites to the prior actions that were the basis for the earlier lawsuits in support of the claim. Though Plaintiffs attempt to distinguish the 2021 Samost Claim by focusing on the part of the complaint related to the alleged negligent settlement by the family's bookkeeper, the complaint also relies upon and realleges the same facts raised in the earlier filed complaints. Unlike Plaintiffs' contention otherwise, the 2021 Samost Claim does not merely involve the same parties and similar background information, (Pla. Reply, ECF No. 65 at 9), it realleges the same factual allegations made in the earlier claims to

20

support the 2021 Samost Claim. Indeed, Plaintiffs' argument that the claims are not related is based on a simplistic approach to evaluating the claims primarily as the specific causes of actions alleged when the critical question is how the policy defines the terms "related acts" and "related claims." Like *Gladstone*, no reasonable jury could stray from the conclusion that the 2019, 2020, and 2021 Samost Claims arose from the same alleged legal representation and mishandling of various Samost entities. As a related claim, like *Papalia*, the 2021 Samost Claim was not first made to Nautilus during the policy period under Section I.A.1. Rather, under the Nautilus policy language, the 2021 Samost Claim, again as a related claim, was made when the other related 2019 and 2021 Samost Claims were first made and reported to Hanover.

Finally, the doctrine of reasonable expectations applies generally when the language of the policy is ambiguous and rarely applies when the literal meaning of the policy is plain. *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir. 2006). Courts "will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1268 (N.J. 2001) (internal citations omitted). Yet, this doctrine is rarely applied and the policy, here, does not warrant the doctrine's application. Neither the "related claims" definition or Section I.A. is overly technical. Moreover, the entire policy, and the application in particular, make clear that related claims would not be covered.

Thus, there is no coverage for the 2021 Samost complaint under the Nautilus Policy. For these reasons, Defendant is entitled to summary judgment on Counts Four, Five, and Seven.

3.   Whether Nautilus has violated the covenant of good faith and fair dealing.

Plaintiffs maintain that by withholding a copy of the policy and then unilaterally excluding the

2021 Samost Claim, Defendant violated the covenant of good faith and fair dealing. (Pla. Br., ECF No. 51-1 at 26). Defendant maintains that Plaintiffs' claim fails if the Court concludes that the 2021 Samost Claim is excluded because it is related to the prior claims. (Def. Opp., ECF No. 61 at 18). The Court agrees.

All contracts under New Jersey law contain an implied covenant of good faith and fair dealing. *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 417 (D.N.J. 2021) (citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259 (N.J. 2002)). "Where, as here, an insurance contract is at issue, a claim for breach of the implied covenant of good faith and fair dealing is 'tantamount' to a claim for 'bad faith.'" *Veyhl v. State Farm Fire & Cas. Co.*, No. 21-10112, 2021 WL 6062304, at *2 (D.N.J. Dec. 22, 2021). Yet, bad faith claims require plaintiffs to allege "the absence of a reasonable basis for denying benefits of the policy." *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 400 (D.N.J. 2000) (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 455 (N.J. 1993)). As the Court finds that Plaintiffs are not entitled to coverage, they cannot prevail on their bad faith claims. *See G-I Holdings*, 2007 WL 842009, at *15 ("As set forth above, it is the finding of this Court that Plaintiffs are not entitled to coverage from Defendants. Accordingly, they may not prevail on their bad faith claims."); *On Air Entm't Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 153 n.11 (3d Cir. 2000) ("Courts construing New Jersey law have indicated that a finding of coverage under the insurance policy is a predicate to a bad faith claim."); *Diebold, Inc. v. Cont'l Cas. Co.*, 719 F. Supp. 2d 451, 468 (D.N.J. 2010) (holding that New Jersey law "does not support [a] bad faith claim insofar as it is independent from the coverage dispute"). Thus, summary judgment must be granted as to Count Six.

### 4.  Whether Nautilus violated the CFA.

Finally, Plaintiffs maintain that Defendant violated the CFA by fraudulently discontinuing the coverage and unilaterally amending the Nautilus Policy. (Pla. Br., ECF No 51-1 at 30).

Defendant argues that this claim is baseless and not supported by law. (Def. Opp., ECF No. 61 at 21).

To state a cause of action under the CFA, a plaintiff must show "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007)). Yet, as Defendant notes, it is well-established in New Jersey that the denial of insurance benefits is not subject to the CFA. *See Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 710 (D.N.J. 2010) (dismissing a CFA claim based on insurer's failure to pay an insurance claim because "[s]uch a claim, though, is a claim for breach of contract, and the breach of an enforceable contract does not constitute a violation of the CFA"); *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 168 (3rd Cir.1998) ("The mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice.").

And Plaintiffs' reliance on *Weiss v. First Unum Life Insurance Company* is unavailing as there the insurer had a practice of discontinuing previously authorized benefits payments. 482 F.3d 254, 256 (3d Cir. 2007). And since *Weiss*, the Third Circuit has reiterated that "New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act." *Granelli v. Chicago Title Ins. Co.*, 569 F. App'x 125, 133 (3d Cir. 2014). That being said, the Court does recognize that the New Jersey Supreme Court has allowed that "[NJCFA's] language is ample enough to encompass the *sale* of insurance policies as goods and services that are marketed to consumers." *Id.* (quoting *Lemelledo v. Beneficial Mgmt. Corp. of America,* 696 A.2d 546, 551 (N.J. 1997)). However, here, there is no evidence that Defendant misrepresented

the terms of the policy *at the time of the sale*. Plaintiffs point to no evidence in the record that there would be coverage for related claims, contrary to the provisions of the policy. Moreover, while Nautilus could not unilaterally amend the policy, the Court will not speculate as to Defendant's motivation in doing so but instead focuses on the language of the applicable policy. And the language that precludes coverage for the 2021 Samost Claim remained the same both in the original and amended policies. Thus, even if it was somehow a violation of the CFA, any such act did not proximately cause any damage to Plaintiffs since the 2021 Samost Claim is excluded regardless of the attempt to unilaterally amend the policy. As such, summary judgment must be granted as to Count Eight.[5] *See Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, No. 20-13901, 2021 WL 2206077, at *9 (D.N.J. May 28, 2021) (dismissing CFA claim based on insurer's refusal to pay benefits under the insurance policy).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, Defendant's Cross-Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Summary Judgment is **DENIED**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[5]  To the extent Plaintiffs seek punitive damages on Counts Six and Seven, that claim is moot given the grant of summary judgment in Defendant's favor as to those Counts.